No. 23-1394

_____

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

JESSE HAMMONS,

*Plaintiff-Appellant,*

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORP., ET AL.,

*Defendants-Appellees.*
_____

On Appeal from the United States District Court
for the District of Maryland
No. 20-cv-02088
_____

**PLAINTIFF-APPELLANT'S RESPONSE IN OPPOSITION TO
DEFENDANTS-APPELLEES' SECOND MOTION TO DISMISS FOR
LACK OF JURISDICTION**
_____

Aron Fischer
Andrew D. Cohen
Joshua M. Goldman
Sean M. Lau
PATTERSON BELKNAP
WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
afischer@pbwt.com
acohen@pbwt.com
jgoldman@pbwt.com
slau@pbwt.com

Joshua A. Block
Leslie Cooper
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2627
Fax: (212) 549-2650
jblock@aclu.org
lcooper@aclu.org

Daniel Mach
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: 202-546-0738
dmach@aclu.org

Louis J. Ebert (Fed. Bar No. 02031)
ROSENBERG MARTIN
GREENBERG, LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
Telephone: (410) 727-6600
Fax: (410) 727-1115
lebert@rosenbergmartin.com

*Counsel for Plaintiff-Appellant Jesse Hammons*

## INTRODUCTION

Once again, Defendants-Appellees attempt to evade accountability for flagrant violations of the Establishment and Equal Protection Clauses by erroneously asserting that this appeal is "moot." In their first Motion to Dismiss, Defendants argued that Plaintiff-Appellant Jesse Hammons could not recover nominal damages or declaratory relief on his constitutional claims because he had received compensatory damages for his statutory claims. *See* ECF Nos. 6, 22. In response, Mr. Hammons explained that nominal damages and declaratory relief serve a different purpose from compensatory damages and redress distinct dignitary harms. *See* ECF No. 21. This Court deferred action on Defendants' first motion. ECF No. 28. Defendants now try a second time. Their latest gambit is to mail two dollars in cash to counsel for Mr. Hammons and assert that the cash is payment for the nominal damages Mr. Hammons would recover if he prevails on his constitutional claims. *See* ECF No. 33-2. The day after posting the two dollars, Defendants filed a second motion to dismiss based on mootness. *See* ECF No. 33-1 ("Second Mot.").

Defendants' second attempt to dismiss this appeal fares no better than their first. Defendants' act of mailing two dollars—which Mr. Hammons promptly returned, *see* Decl. of Aron Fischer ("Fischer Decl."), Ex. A—is nothing other than an unaccepted offer of settlement, and an "unaccepted settlement offer . . . does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016);

1

*accord Bennett v. Off. Fed. Emp's. Grp. Life. Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017).  Tendering money without an actual judgment for all the relief requested in Mr. Hammons's Complaint cannot "moot" a tort claim—especially a nominal damages claim intended to vindicate a constitutional right.

If Defendants do not want to "devote resources to briefing a complex appeal and cross-appeal," Second Mot. at 8, Defendants cannot merely tender money.  They would need to consent to an *entry of judgment* against them providing Mr. Hammons with *all* relief requested in his operative complaint, including entry of a declaratory judgment on his constitutional claims.  Under that hypothetical scenario, this Court would not dismiss Mr. Hammons's appeal.  It would *vacate* the District Court's dismissal of Mr. Hammons's constitutional claims and remand with instructions for the court to enter judgment in Mr. Hammons's favor.  Defendants propose no such thing.  They seek to dismiss the appeal so that they can avoid the accountability that would come with entry of an adverse judgment.

Because Mr. Hammons maintains a concrete interest in his appeal, Defendants' Second Motion to Dismiss should be denied.

## BACKGROUND

Mr. Hammons relies on the factual background included in his response to Defendants' previous motion.  *See* ECF No. 21 at 2-3.  He adds the following as especially relevant to Defendants' new motion.

Mr. Hammons is a transgender man diagnosed with gender dysphoria. *See Hammons v. Univ. of Md. Med. Sys. Corp.*, 649 F. Supp. 3d 104, 106 (D. Md. 2023). Defendants, who are governmental entities operating a public hospital system, denied Mr. Hammons a hysterectomy as contrary to the Ethical and Religious Directives of the United States Conference of Catholic Bishops. *See id.* at 108, 110, 125.

Mr. Hammons sued. The District Court dismissed his claims for violations of the Establishment and Equal Protection Clauses on sovereign immunity grounds but awarded Mr. Hammons compensatory damages on his statutory claim. *See* Notice of Appeal, Exs. A–E, D. Ct. ECF Nos. 136-1–136-5. Mr. Hammons now appeals the dismissal of his constitutional claims, for which he continues to seek nominal damages and retrospective declaratory relief. *See* Complaint, D. Ct. ECF No. 1 at 24 ("Compl."). Defendants have cross-appealed. *See* Notice of Cross-Appeal, D. Ct. ECF No. 141.

On April 14, 2023, after Mr. Hammons docketed this appeal, Defendants filed a Motion to Summarily Dismiss for Lack of Jurisdiction, contending that Mr. Hammons's appeal was moot. *See* ECF No. 6. The Motion was fully briefed. *See* ECF Nos. 6, 20, 21. On July 17, 2023, this Court deferred action on that Motion. ECF No. 28.

On August 1, 2023, this Court held Mr. Hammons's appeal in abeyance pending an en banc decision in *Fain v. Crouch*, No. 22-1927. ECF No. 32.

On October 19, 2023, Mr. Hammons's counsel received a letter and two dollars in cash from counsel for Defendant-Appellees. *See* ECF No. 33-2. On the same day, Defendant-Appellees filed their Second Motion to Dismiss for Lack of Jurisdiction, contending that the tender of two dollars provides an alternative basis for holding Mr. Hammons's appeal moot. *See* ECF No. 33-1.

On October 20, 2023, Mr. Hammons's counsel posted the two dollars back to counsel for Defendants by priority mail, noting that Mr. Hammons "declines to accept the two dollars." Fischer Decl., Ex. A.

## ARGUMENT

Defendants' second attempt to dismiss the appeal as moot must be rejected. Tendering money without an actual judgment for all the relief requested cannot "moot" a tort claim. To terminate litigation, a tender must either (a) be accepted by the plaintiff or (b) culminate in an actual judgment providing the plaintiff with complete relief, including an admission or finding of liability. These requirements are especially important in cases involving nominal damages, which ensure that "a plaintiff who proved a legal violation could always . . . have a means to vindicate" that legal right. *Uzuegbunam v. Preczweski*, 141 S. Ct. 792, 800 (2021) (cleaned up). Because Mr. Hammons has rejected Defendants' tender of two dollars and

because Defendants have not consented to a judgment providing Mr. Hammons with complete relief, Mr. Hammons maintains a concrete interest in this dispute and Defendants' second motion must be denied.

I.   **Defendants Cannot "Moot" a Tort Claim By Tendering Money Unless the Tender Is Accepted or a Judgment Is Entered Providing Plaintiff With Complete Relief.**

   A. **A Rejected Tender Is an Unaccepted Settlement Offer, Which Cannot Moot a Case.**

A mere offer or tender of money cannot "moot" a tort claim for damages unless the plaintiff agrees to accept the funds.  Before the Supreme Court's decision in *Campbell-Ewald*, some lower courts erroneously held that a defendant could "moot" a claim by providing an offer of judgment for complete relief pursuant to Federal Rule of Civil Procedure 68.  *See* 577 U.S. at 160 (recognizing circuit split). *Campbell-Ewald* squarely repudiated those decisions.  Adopting the analysis of Justice Kagan's dissent in *Genesis Healthcare Corporation v. Symczyk*, 569 U.S. 66 (2013), the Court explained that "[a]n unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect.  As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made." *Id.* at 162 (2016)  (internal quotation marks and citations

omitted). "With the offer off the table, and the defendant's continuing denial of liability, adversity between the parties persists." *Id.* at 156.[1]

Following *Campbell-Ewald*, courts of appeals—including this Court—have unanimously recognized that the same Article III principles apply when a defendant attempts to unilaterally moot a plaintiff's claims by "tendering" money. "A tender is nothing more than a particular species of offer," *Ung v. Universal Acceptance Corp.*, 190 F. Supp. 3d 855, 861 (D. Minn. 2016), and "an offeror is almost never permitted to *force* acceptance on an unwilling offeree," *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 628 (7th Cir. 2017). A plaintiff can simply reject the tender, thereby maintaining a live case and controversy. *See, e.g.*, *Bennett v. Off. Fed. Emp's. Grp. Life. Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017) (holding that defendant's "offer of settlement, which included tendering a check for the benefits [plaintiff] asserted she was due," did not moot case); *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 94 (1st Cir. 2021) (finding no "good reason to reach a different result when a check, rather than a Rule 68 offer, is tendered"); *Radha*

---

[1] To be sure, the *Campbell-Ewald* Court reserved the question of whether a case could be moot if "a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, *and the court then enters judgment for the plaintiff in that amount*." 577 U.S. at 166 (emphasis added). But, as discussed below, that hypothetical scenario would require more than the deposit of funds—it would require Defendants' acquiescence to an actual judgment in plaintiff's favor that provides complete relief for all of the plaintiff's claims, including a finding a liability. *See infra* at 12-14.

*Geissman, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018) ("[W]e see no material difference between a plaintiff rejecting a tender of payment . . . and an offer of payment."); *Fulton Dental v. Bisco, Inc.*, 860 F.3d 541, 547 (7th Cir. 2017) (treating the "law of tenders" as equivalent to the "law governing unaccepted contractual offers" for purposes of applying *Campbell-Ewald*); *Hoekman v. Educ. Minnesota*, 41 F.4th 969, 977 (8th Cir. 2022) ("One might think that [plaintiff] has no right to litigate in federal court about whether he is entitled to relief that is already present for the taking [through a check sent by defendant], but that view was rejected in *Campbell-Ewald*.") (internal quotations marks and citations omitted); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("[A] claim becomes moot when a plaintiff actually receives complete relief . . . , not merely when that relief is *offered or tendered*.") (emphasis modified); *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *8 (11th Cir. Aug. 30, 2023) ("[P]ayment moots an appeal only if the parties mutually intended a final settlement of all the claims in dispute and a termination of the litigation.") (internal quotation marks omitted).

Defendants nevertheless propose a legal distinction between offering a check and tendering literal cash. According to Defendants, unlike a plaintiff who can reject a check by refusing to deposit it, a plaintiff who receives unwanted cash has no legal ability to refuse the tender. Defendants rely on *Price v. Berman's Auto., Inc.*, No.

14-763-JMC, 2016 WL 1089417, at *2-3 (D. Md. Mar. 21, 2016), which reasoned that a cashier's check is different from an ordinary check because there is no risk of the check being denied for lack of funds. But that was the same argument made by Justice Alito's dissent in *Campbell-Ewald*, and is inconsistent with the *Campbell-Ewald* majority's insistence that an offer be reciprocated by acceptance. *See* 577 U.S. at 185 (Alito, J., dissenting) (focusing on whether "defendant will back up its offer to pay with an actual payment"); *id.* at 188 n.3 (Alito, J., dissenting) (recognizing that his position conflicted with the majority); *id.* at 169 (Thomas, J., concurring) (observing that the Court "rest[ed] its conclusion on modern contract law principles"). Unlike *Price* and cases citing it, courts adhering to the reasoning of the *Campbell-Ewald* majority have repeatedly rejected Defendants' argument. *See, e.g.*, *Jang v. Asset Campus Hous., Inc.*, No. LA CV15-01067, 2016 WL 11755107, at *5 (C.D. Cal. Mar. 17, 2016) ("Assuming . . . that Defendants presented cash equal to the full amount of Plaintiff's claims . . . it would not result in making them moot. . . . The letter sent on behalf of Defendants as well as the enclosed cash was an apparent attempt to sidestep the procedures set forth in Fed. R. Civ. P. 68. . . . Plaintiff could have rejected an offer made pursuant Rule 68. . . . [T]here is no reason that he should have lesser rights as a result of the offer made here, which included cash."); *Williams v. Lakeview Loan Servicing LLC*, No. 4:20-CV-01900, 2023 WL 6282829, at *6 (S.D. Tex. Sept. 26, 2023) (holding that defendant's

unilateral decision to apply a credit to plaintiff's mortgage account "without . . . a meaningful opportunity to accept or reject the offer" did not moot the suit and defendant could not deprive plaintiff of "control over whether to accept the payment and moot her claims"); *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1220 (M.D. Fla. 2020) (rejecting assertion of mootness where defendant "accessed [plaintiff's] credit card account without his authority or knowledge (or that of his counsel)" and plaintiff "quickly rejected the money, before the motion for judgment on the pleadings was ripe for consideration"); *Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, No. 16CV0125, 2020 WL 8409311, at *10 (W.D. Pa. Nov. 3, 2020) (tender of certified check did not moot case), *aff'd*, 2021 WL 2838379 (3d Cir. July 8, 2021); *Krumm v. Kittrich Corp.*, No. 4:19 CV 182 CDP, 2019 WL 6876059, at *3 (E.D. Mo. Dec. 17, 2019) (same).[2]

---

[2] Defendants' assertions also conflict with the common law of tenders, which "exists principally as a means of limiting damages or costs rather than mooting claims." *Chen*, 819 F.3d at 1146 n.7. Under the common law of Maryland and elsewhere, refusal of a tender is always allowed, in which case the debtor remains obligated to the creditor, though interest may stop accruing. *See, e.g.*, *Forwood v. Magness*, 121 A. 855, 856 (Md. 1923) (creditor's refusal of payment would not operate "in bar of the debt" (quoting *Bowie v. Duvall*, 1 Gill & J. 175, 183 (Md. 1829))); *Malan v. Tipton*, 247 P.3d 1223, 1229 (Or. 2011) ("[A]t common law, the actual production of money did not relieve a debtor of the duty of payment; the production, if not accepted, only relieved the debtor of liability for the consequences of nonpayment."). Refusal of tender therefore parallels the rejection of a gift, which at common law "leaves the title . . . as if the gift had not been made." *Brown v. O'Keefe*, 300 U.S. 598, 602 (1937).

The Sixth Circuit's decision in *Jarrett v. United States*, 79 F.4th 675 (6th Cir. 2023), is not to the contrary. *Jarrett* held that a tax-refund case was mooted after the government issued a tax refund. But *Jarrett* arose in the special context of a tax-refund dispute, which is governed by different substantive law. As *Campbell-Ewald* explained when distinguishing "a trio of 19th-century railroad tax cases," substantive tax law treats payment of a tax debt as legally "extinguish[ing]" the underlying claim. 577 U.S. at 163-64; *accord id.* at 174 (Thomas, J., concurring) (distinguishing tax cases on the same grounds). Thus, in *Jarrett*, the Sixth Circuit explained that that a plaintiff has no ability to refuse a tax refund because, "[b]y law, the IRS pays the refund when it mails the original check" even if the check is never received or cashed. 79 F.4th at 680. The court emphasized that, once the government issues a refund, federal courts cannot grant additional declaratory relief because sovereign immunity for declaratory relief has not been waived for tax-refund cases. *See* 28 U.S.C. § 1346(a)(1); *see also Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (emphasizing that Congress has narrowly conscribed waiver of immunity in tax cases and excluded tax cases from the Declaratory Judgment Act).[3]

---

[3] To the extent dicta in *Jarrett* purports to make broader claims beyond the specific context of tax refunds, those dicta are mistaken. *Jarrett* claimed to find support for its holding in the common law of tenders but, as explained below, *see infra* at 12-14, the common law of tenders required a defendant to admit liability and agree to the entry of judgment in plaintiff's favor. *Jarrett* also claimed to find support in the

Defendants also rely on *Beatley v. Ayers*, 851 F. App'x 332, 339 (4th Cir. 2021), in which this Court noted that the defendant's mid-litigation payment of $134,000 mooted a plaintiff's breach-of-contract claim. But there, the plaintiff *accepted* payment and agreed that the defendant's payment obligation, pursuant to a prior settlement agreement, had now been satisfied. The plaintiff in *Sumpter v. Pennsylvania National Mutual Casualty Insurance Co.*, No. 1:19-CV-03270-JMC, 2021 WL 4710808 (D. Md. Oct. 8, 2021), likewise accepted payment of the defendant's assessed obligation. Neither case has any bearing on what happens when a plaintiff *rejects* the tendered payment.[4]

---

decisions of other circuits, but as explained above, *see supra* at 6-7, the decisions it cites from the Second and Ninth Circuits say the opposite, and the cited decisions from the Federal Circuit were issued before *Campbell-Ewald*. And, although *Jarrett* cites a Third Circuit decision for the proposition that "[s]mall claims for cash can always be mooted swiftly with payment of the amount claimed," the court offered that statement to *restrict* a defendant's ability to moot a class plaintiff's claim by sending her a check for the amount she sought, citing the "flexib[ility]" of mootness doctrine. *Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 204 (3d Cir. 2022). The court expressly reserved the question of whether an unaccepted check for the full amount could ever moot a case. *See id.* at 205–06.

[4] None of the other Fourth Circuit precedents cited by Defendants supports their assertion that tendering cash can moot a claim in the absence of a judgment in plaintiff's favor. One cited case involved a motion to compel arbitration and has nothing to do with offers or tenders of judgment at all. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002). The other two involved situations in which only prospective claims for injunctive relief were mooted—not claims for damages or retrospective declaratory relief. *See Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013); *Eden, LLC v. Justice*, 36 F.4th 166, 170 (4th Cir. 2022). Indeed, one case specifically noted that the plaintiff had failed to request damages or retrospective declaratory relief. *Id.* at 169 (noting that plaintiff had requested prospective "declaratory and injunctive relief" but "no money damages").

**B. To Terminate a Case Without Plaintiff's Acceptance, Defendants Must Provide Complete Relief, Including an Entry of Judgment and an Admission or Finding of Liability.**

The *Campbell-Ewald* Court reserved the question of whether, in the absence of an accepted offer, a case could be moot if "a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." 577 U.S. at 166 (emphasis added). But, even under that hypothetical, judgment must be entered for the plaintiff; a case is not moot "when the supposed capitulation in fact fails to give the plaintiff all the law authorizes and she has sought." *Genesis Healthcare*, 569 U.S. at 85 (Kagan, J., dissenting); *accord Campbell-Ewald*, 577 U.S. at 170–71 (Thomas, J., concurring) (explaining that the common law of tenders requires a tendering defendant to admit liability); *see also Chen*, 819 F.3d at 1144 ("[A] lawsuit—or an individual claim—becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation.").

In these circumstances, where a court enters judgment after a defendant's unconditional surrender, it is the entry of judgment that "moots" the case—not the tendering of the money. Some courts once colloquially referred to unconditional surrenders as of themselves "mooting" a case. But since *Campbell-Ewald*, courts of appeals have rejected that characterization. *See, e.g.*, *Fulton Dental,* 860 F.3d at 544 ("Mootness, plainly, is not the correct legal concept for the course of events that took

place here."); *Radha Geismann*, 909 F.3d at 542 (rejecting terminology of mootness and explaining that, "where a defendant surrenders to 'complete relief' in satisfaction of a plaintiff's claims, the district court may enter default judgment against the defendant—even without the plaintiff's agreement thereto—and then, *after* judgment is entered, the plaintiff's individual claims will become moot for purposes of Article III" (internal quotation marks and citation omitted)); *see also Polk v. Del Gatto, Inc.*, No. 21 Civ. 129 (PAE), 2021 WL 3146291, at *5 (S.D.N.Y. Jul. 23, 2021) (absent judgment, "[n]o amount of cash alone would moot [plaintiff's] case, but that is all [defendant] purports to have tendered").

Complete relief also includes an admission of liability. As Justice Thomas explained in his *Campbell-Ewald* concurrence, a valid tender at common law "was deemed an admission of a liability on the cause of action to which the tender related, so any would-be defendant who tried to deny liability could not effectuate a tender." 577 U.S. at 170 (Thomas, J., concurring) (internal quotation marks and citation omitted); *see also Bais Yaakov*, 12 F.4th at 94 ("[A]s Justice Thomas pointed out, at common law unconditionally offering funds while still denying liability is not a tender that requires the end of a lawsuit."); *Palatine Ins. Co. v. O'Brien*, 71 A. 775, 779 (Md. 1908) ("plea of tender" is "treated as an admission" of liability); *cf. Chen*, 819 F.3d at 1142 (finding admission of liability unnecessary to provide complete

13

relief only because the plaintiff's complaint has failed to request "an admission of liability or a declaration that [defendant] violated his rights").[5]

Before *Campbell-Ewald*, the Second Circuit had stated that it is sufficient for the court to enter a "default judgment," which would be an admission of factual allegations but not liability. *See McCauley v. Trans Union, LLC*, 402 F.3d 340, 342 (2d Cir. 2005); *see also Radha Geismann*, 909 F.3d at 542 (continuing to use terminology of "default judgment" without analyzing whether that terminology is consistent with *Campbell-Ewald* and the common law of tenders). But even under that approach, the District Court would still need to independently "determine whether the well-pleaded allegations in [the operative] complaint support the relief sought" before entering default judgment. *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023); *accord Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010). Thus, regardless of whether Defendants affirmatively admit or the District Court determines legal liability, a plaintiff is entitled a judgment granting him all the relief he would receive if he prevailed after litigation on the merits. Only then—after such a judgment has been entered—could an appeal be deemed "moot."

---

[5] Some dissenting Justices have suggested that an admission of legal liability is unnecessary, *see Campbell-Ewald*, 577 U.S. at 183 (Roberts, C.J., dissenting), but a majority of the Court has never embraced that position, *see id*. at 174 (Thomas, J., concurring) (reserving that question).

### C. Entry of Judgment Is Especially Important To Provide Complete Relief for Constitutional Claims Involving Nominal Damages.

An entry of judgment is especially critical for claims seeking nominal damages for constitutional violations.  Unlike awards of compensatory damages, nominal damages is "not compensation for loss or injury, but rather [a] recognition of a violation of rights." *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003).  Even if it were possible in purely commercial disputes to provide a plaintiff with "complete relief" simply by tendering funds, it is impossible to provide complete relief for nominal damages claims without a finding of liability.

As explained in Mr. Hammons's opposition to Defendants' first Motion to Dismiss, nominal damages for violations of constitutional rights are "categorically different from even small compensatory damages claims, as compensatory damages and nominal damages serve distinct purposes." *Platt v. Moore*, 15 F.4th 895, 904 (9th Cir. 2021) (cleaned up).  Nominal damages "are meant to guarantee that unconstitutional acts remain actionable rather than to 'measure' the constitutional injury in any meaningful sense." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 319 (2d Cir. 1999).  "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978).  "A contrary rule would have meant, in many cases, that

15

there was no remedy at all for those rights, such as due process or voting rights, that [are] not readily reducible to monetary valuation." *Uzuegbunam*, 141 S. Ct. at 800.

Mailing a plaintiff two dollars in cash for nominal damages without an actual judgment in the plaintiff's favor would fail to provide complete relief because the purpose of nominal damages is to ensure that "a plaintiff who proved a legal violation could always . . . have a means to vindicate" that legal right. *Id.* (cleaned up). Allowing Defendants to "moot" claims of nominal damages by mailing two dollars would nullify the critical function of nominal damages and leave a plaintiff who suffers intangible dignitary harm with no way to vindicate those rights.[6] Unless accompanied by an actual judgment in the plaintiff's favor, two dollars in nominal damages provides no relief at all. *See Gilley v. Stabin*, 652 F.Supp.3d 1268, 1284 (D. Or. 2023) (concluding that "Plaintiff's claim for nominal damages is not moot unless Defendant accepts entry of judgment in Plaintiff's favor" because "[p]ayment of the damages does not on its own serve the purposes of a suit for nominal damages").

---

[6] Nineteenth-century courts similarly refused to allow "tender" of nominal damages to end a suit. *See, e.g.*, *Jones v. Water Lot Co. of Columbus*, 18 Ga. 539, 541 (Ga. 1855) (holding it "insuperable" that tender of nominal damages could not end suit, reasoning that "[t]he plaintiff was entitled to a verdict" because "it established his right" and "would serve to answer many valuable purposes").

II.     **Defendants Tender of Two Dollars Cannot Moot Mr. Hammons Claims Because He Has Rejected the Tender and There Has Been No Judgment Providing Him With Complete Relief.**

Under these principles, Defendants' second motion to dismiss must be denied. Mr. Hammons has brought claims for nominal damages and a retrospective declaratory judgment to redress Defendants' violations of his rights under the Equal Protection Clause and Establishment Clauses. *See* Compl. at 24. Defendants have purported to tender two dollars to resolve Mr. Hammons's claims without any entry of judgment, without a finding of liability, and without the declaratory relief requested in Mr. Hammons's complaint. Mr. Hammons is free to reject Defendants' attempt to tender two dollars, and Defendants cannot force Mr. Hammons to accept a tender that fails to provide complete relief.

Mr. Hammons's claims for nominal damages stand on a different footing from the tax-refund claim in *Jarrett*. Unlike a plaintiff who brings a tax-refund suit in which the government's issuance of a refund automatically extinguishes a claim, Mr. Hammons's claims for nominal damages are "not readily reducible to monetary valuation." *Uzuegbunam*, 141 S. Ct. at 800. "Payment of the damages does not on its own serve the purposes of a suit for nominal damages," *Gilley*, 652 F. Supp. 3d at 1284, because nominal damages are "not compensation for loss or injury, but rather [a] recognition of a violation of rights," *Calhoun*, 319 F.3d at 941.

17

As part of the complete relief requested in his complaint, Mr. Hammons is entitled to an entry of judgment granting him retrospective declaratory relief. Defendants assert that the courts lack jurisdiction to award declaratory relief in the absence of a live claim for damages. But that argument is circular. Mr. Hammons continues to have a live claim for damages, and those claims could be mooted only by an actual entry of judgment in his favor providing him with complete relief. Complete relief—indeed, the *only* true relief in the context of nominal damages—requires a finding of liability.

## CONCLUSION

Defendants-Appellees' Second Motion to Dismiss for Lack of Jurisdiction should be denied.

November 13, 2023                    Respectfully submitted,

                                     */s/ Aron Fischer*
                                     Aron Fischer
                                     Andrew D. Cohen
                                     Joshua M. Goldman
                                     Sean M. Lau
                                     PATTERSON BELKNAP WEBB &
                                     TYLER LLP
                                     1133 Avenue of the Americas
                                     New York, NY 10036
                                     (212) 336-2000
                                     afischer@pbwt.com
                                     acohen@pbwt.com
                                     jgoldman@pbwt.com
                                     slau@pbwt.com

Joshua A. Block
Leslie Cooper
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2627
Fax: (212) 549-2650
jblock@aclu.org
lcooper@aclu.org

Daniel Mach
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: 202-546-0738
dmach@aclu.org

Louis J. Ebert (Fed. Bar No. 02031)
ROSENBERG MARTIN GREENBERG,
LLP
25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
Telephone: (410) 727-6600
Fax: (410) 727-1115
lebert@rosenbergmartin.com

*Counsel for Plaintiff-Appellant*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4531 words. This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ Aron Fischer*
Aron Fischer
PATTERSON BELKNAP WEBB &
TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2000
afischer@pbwt.com


*Counsel for Plaintiff-Appellant*
