No. 23-1394

─────────────────────────

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

─────────────────────────

JESSE HAMMONS,

*Plaintiff-Appellant*,

v.

UNIVERSITY OF MARYLAND MEDICAL SYSTEM CORP., ET AL.,

*Defendants-Appellees*.

─────────────────────────

On Appeal from the United States District Court
for the District of Maryland
No. 20-cv-02088

─────────────────────────

**APPELLEES' REPLY IN SUPPORT OF SECOND
MOTION TO DISMISS FOR LACK OF JURISDICTION**

─────────────────────────

Denise Giraudo
Paul Werner
SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW
Washington, D.C. 20036
(202) 747-1906
dgiraudo@sheppardmullin.com
pwerner@sheppardmullin.com

Yaakov M. Roth
  *Counsel of Record*
Audrey Beck
Ryan M. Proctor
JONES DAY
51 Louisiana Avenue, NW
Washington, D.C. 20001
(202) 879-3939
yroth@jonesday.com
abeck@jonesday.com
rproctor@jonesday.com

*Counsel for Appellees*

## **INTRODUCTION**

Hammons refuses to take "yes" for an answer. After prevailing below on his statutory claim, Defendants paid him the full compensatory damages he sought for his injury. Nonetheless, he pressed ahead to appeal the dismissal of his parallel constitutional claims, contending they were not moot due to the prospect of nominal damages. So Defendants tendered to him those nominal damages in cash, thereby providing the full relief he could ever hope to recover in this action.

Once again, however, Hammons refuses to accept victory. He now claims he is entitled to *refuse* the relief he seeks, and to insist on a *judicial declaration* that Defendants violated his rights. That simply exposes, once again, that this lawsuit is an ideological campaign, not a genuine attempt to redress concrete injury. Article III does not countenance that. This appeal must be dismissed.

## **ARGUMENT**

Hammons does not deny that Defendants provided him, in cash, with the full nominal damages he claims to seek. But he says that does not moot his claims, for two basic reasons. *First*, he analogizes the payment to an unaccepted settlement offer that he is entitled to reject. *Second*, he argues that nominal damages without a judicial declaration or judgment would not provide complete relief. Both arguments are wrong and unsupported; Hammons cites a plethora of cases that do not address this scenario, while dismissing or ignoring those that foreclose his position.

1

An unaccepted settlement offer does not moot a claim, but putting cash in a plaintiff's hands is fundamentally different. The Sixth Circuit has expressly so held, and even Hammons's own cited cases recognize this. And the payment of nominal damages *does* provide complete relief when (as here) no prospective relief is sought. A declaration about historical events does not redress any Article III injury, or else no case would ever be moot—that is why a plaintiff must *seek* nominal damages to create standing, and it is why *receipt* of those nominal damages ends the case.

## I.   AN OFFER DOES NOT MOOT A CLAIM, BUT A TENDER OF PAYMENT DOES.

Hammons argues that an unaccepted settlement offer cannot moot a case. Opp. 5-11. True. But caselaw recognizes that an actual *tender* of payment in a form that provides the plaintiff with complete relief is distinct from a mere *offer* to do so. Here Defendants effectuated the former.

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), dealt only with offers, and Hammons is wrong to claim otherwise. The majority distinguished the case before it from those "involv[ing] actual payment" of the damages sought. *Id.* at 164. And the dissents likewise understood the majority not to address the effect of actual payment. *See id.* at 184 (Roberts, C.J., dissenting) ("The majority does not say that *payment* of complete relief" "is insufficient to moot a case."); *id.* at 188 (Alito, J., dissenting) ("Today's decision thus does not prevent a defendant who actually pays complete relief … from seeking dismissal on mootness grounds.").

To be sure, the dissenters thought that even a mere offer suffices for mootness, *id.* at 179 (Roberts, C.J., dissenting); *id.* at 184 (Alito, J., dissenting); the majority disagreed, *id.* at 156 (majority op.). But to argue, as Defendants do here, that actual payment moots a damages claim is not to recycle "the same argument" rejected in *Campbell-Ewald*. Opp. 8. The Court expressly *reserved* it.

None of Hammons's appellate authority rejects the argument, either. All of his cited cases involved either sending a check or making a payment into a court registry. They hold that those actions alone do not amount to payment, because they require some further action before the plaintiff's injury is actually redressed.

An "ordinary check," for instance, is just "an offer to pay: The recipient has a promise, but no funds." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 94 (1st Cir. 2021); *see also Hoekman v. Educ. Minn.*, 41 F.4th 969, 977 (8th Cir. 2022) (similar); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 5608014, at *5 (11th Cir. Aug. 30, 2023) (equating "check" with "offer"); *Bennett v. Off. of Fed. Employee's Grp. Life Ins.*, 683 F. App'x 186, 188 (4th Cir. 2017) (per curiam). After all, a check may bounce; it does not itself confer relief. Sending a check is thus governed by *Campbell-Ewald* and does not moot a case if the plaintiff rejects it.

Likewise, depositing funds into a court registry requires further action to give a plaintiff relief. Federal Rule of Civil Procedure 67(a) allows a defendant to deposit "a sum of money" with the district court where that is "the relief sought" by the

plaintiff. When the court is given such a deposit, the case is not yet moot because *the plaintiff* "has not yet received any relief." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (emphasis omitted); *see also Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 542 (2d Cir. 2018) (same); *Fulton Dental, LLC v. Bisco, Inc.*, 860 F.3d 541, 545 (7th Cir. 2017) (noting that deposit alone does not give "the plaintiff [the] right … to withdraw [the] funds"). The deposited funds may "be withdrawn" only "by order of court." 28 U.S.C. § 2042. So only after the court enters a "judgment" that "a specified amount of damages should be paid" does the plaintiff receive relief that "moot[s]" his claims. *ZocDoc*, 909 F.3d at 542.

By contrast, actually *providing* the plaintiff with the money he demands, such as by a direct deposit or cash payment, is different. Unlike a check or a court deposit, which may still "leav[e] the plaintiff emptyhanded," a payment "gives the plaintiff all the relief she could receive, and as a result it moots any claim for damages." *Jarrett v. United States*, 79 F.4th 675, 678, 682 (6th Cir. 2023). As the Supreme Court has long recognized, once such payment is complete, the "cause of action has ceased to exist." *California v. San Pablo & T.R. Co.*, 149 U.S. 308, 313 (1893); *see also Little v. Bowers*, 134 U.S. 547, 558 (1890); *San Mateo Cnty. v. S. Pac. R.R. Co.*, 116 U.S. 138, 141-42 (1885); *Campbell-Ewald*, 577 U.S. at 164 (reading these cases to hold that "actual payment" of damages "for which suit was brought" moots case). Nothing is left for the court to do.

4

*Jarrett* is the most recent, thorough, and on-point precedent. Hammons tries to narrow it to "the special context of a tax-refund dispute" (Opp. 10), but cannot reconcile that claim with the reasoning of the decision. The Sixth Circuit rested on a generally applicable distinction between a mere "offer" and "[a]ctual payment"—a distinction it said "applies with *equal* force to tax refund lawsuits," not *unique* force. 79 F.4th at 678-79 (emphasis added). The court did note that "declaratory judgments" are unavailable in tax suits, but only to explain why the made-whole plaintiff could not stave off mootness by seeking a prospective, "good-for-tomorrow-only judgment." *Id.* at 683. The same is true of Hammons, who did not and cannot seek prospective relief. D. Ct. Dkt. 52, at 16; *infra* Part II.

Hammons also fails to grapple with the other authority expressly recognizing and applying the key distinction between offers and payments. He simply ignores *Gates v. City of Chicago*, which held that "tender[ing] the full amounts the plaintiffs requested" mooted their claims, even though they purported to "refus[e] the tender." 623 F.3d 389, 413 (7th Cir. 2010). He attempts to distinguish *Duncan v. Governor of Virgin Islands*, which noted that "[s]mall claims for cash can always be mooted swiftly with payment of the amount claimed," 48 F.4th 195, 206 (3d Cir. 2022), on the ground that the court there did not find mootness. Opp. 10 n.3. But that was because of "the picking-off exception" for class actions, which prevents defendants from torpedoing an entire action by paying a class representative's individual claim.

48 F.4th at 206; *see also Williams v. Lakeview Loan Serv. LLC*, 2023 WL 6282829, at *6 (S.D. Tex. Sept. 26, 2023) (same). And he ignores the cases that treat checks as actual payments rather than mere offers, and thus as sufficient to moot a claim over a plaintiff's objection. *See Jarrett*, 79 F.4th at 680 (collecting cases).[1]

Indeed, even Hammons's own cited appellate cases recognize the distinction between offers and actual payments. In holding that checks or Rule 67 deposits did not trigger mootness, they emphasized that a case *does* "become[] moot when a plaintiff *actually receives* all of the relief" he seeks. *ZocDoc*, 909 F.3d at 541; *see also Chen*, 819 F.3d at 1144 (same); *Hoekman*, 41 F.4th at 977 (distinguishing "an uncashed check" from "an 'actual payment'"). Hammons is thus wrong to claim these cases conflict with *Jarrett*. Opp. 10 n.3. No appellate case has held that an actual payment of the money demanded fails to moot a damages claim.[2]

---

[1] To be clear, this Court need not decide here how to characterize checks, which has divided courts. Whether checks are mere offers (which do not moot a case) or actual payments (which do), a tender of cash is clearly the latter; the key point is that courts all recognize that as the relevant dichotomy. *See Jarrett*, 79 F.4th at 680.

[2] Most of the district court cases that Hammons cites are also not analogous; they involved checks that the courts treated as offers. *Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *4 (S.D.N.Y. July 23, 2021); *Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 2020 WL 8409311, at *10 (W.D. Pa. Nov. 3, 2020); *Krumm v. Kittrich Corp.*, 2019 WL 6876059, at *3 (E.D. Mo. Dec. 17, 2019); *Ung v. Universal Acceptance Corp.*, 190 F. Supp. 3d 855, 860 (D. Minn. 2016). Only two cases actually rejected mootness despite actual payment, but they contain no reasoning and were decided without the benefit of the Sixth Circuit's published decision. *See Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1220 (M.D. Fla. 2020); *Jang v. Asset Campus Hous., Inc.*, 2016 WL 11755107, at *5 (C.D. Cal. Mar. 17, 2016).

At bottom, the *mere possibility* that the plaintiff will receive complete relief does not moot a claim and thus entitles the plaintiff to reject the offer, but the *actual receipt* of relief does moot a claim, even if the plaintiff prefers to litigate. Hammons cites cases that establish the former proposition, but this case (like *Jarrett*) involves the latter.

## II. DEFENDANTS PROVIDED HAMMONS WITH ALL OF THE RELIEF POTENTIALLY AVAILABLE IN THE LITIGATION.

Hammons's second legal premise is equally correct—and equally inapposite. A claim is not moot until the plaintiff has recovered all the relief he has sought and could potentially secure through the litigation. Opp. 12-16. But that prerequisite is satisfied here. This is a retrospective action for money. Hammons recovered full compensatory damages below. And he has now also received the nominal damages he claims he is owed. There is no further relief to obtain.

Sometimes a request for *prospective* relief can keep a claim alive even after a plaintiff has received all the damages he sought. *E.g.*, *Krumm v. Kittrich Corp.*, 2019 WL 6876059, at *3 (E.D. Mo. Dec. 17, 2019) (cited at Opp. 9). In such cases, even though the plaintiff's *past* injury may be fully redressed, an injunction or even a declaration could still redress a *future* injury. *Long v. Pekoske*, 38 F.4th 417, 423 (4th Cir. 2022). But because Hammons cannot have a second hysterectomy, he expressly does "not seek prospective relief." D. Ct. Dkt. 52, at 16.

Similarly, in some cases a judgment is a necessary prerequisite to getting the monetary relief into the plaintiff's hands. As discussed above, for example, a Rule 67 deposit cannot be accessed by a plaintiff until the district court "order[s]" that he receive the funds. 28 U.S.C. § 2042. The case is therefore not moot unless and until that judgment has been entered. *See Chen*, 819 F.3d at 1145. But that principle does not apply here either. Defendants sent the cash directly to Hammons's counsel. No court intervention was needed to give him access to the money tendered.

Nonetheless, Hammons claims his appeal is not moot unless he also receives a judgment in his favor. That is wrong, because in this context a "judgment" does not redress any Article III injury and therefore is not necessary to provide complete relief. As this Court has long recognized, "[b]y itself, a declaratory judgment cannot be the redress" supporting an Article III controversy; rather, "plaintiffs must identify some further concrete relief" that the litigation could secure. *Comite de Apoyo a los Trabajadores Agricolas v. U.S. Dep't of Lab.*, 995 F.2d 510, 513 (4th Cir. 1993). "Otherwise plaintiffs with mooted claims of injury could gain federal jurisdiction simply by demanding declaratory relief." *Id.*

Having received the nominal damages he requested, Hammons no longer has any unsatisfied demand for relief on which he can base Article III jurisdiction. His desire for ideological vindication by the courts in the form of a declaration is not enough to keep his case alive.

Any other view would prevent a case from *ever* becoming moot, because a plaintiff could always demand retrospective "declaratory" relief. Unsurprisingly, Hammons cannot point to any authority supporting that untenable conclusion, which is nothing other than a right to an advisory opinion.

To the contrary, precedent flatly forecloses requiring a judgment or admission of liability as a prerequisite to mootness. As the Supreme Court has made clear, once the defendant redresses all the plaintiff's concrete injuries, the plaintiff's stake in the case is "over," even if the parties "continue to dispute the lawfulness" of the defendant's conduct. *Alvarez v. Smith*, 558 U.S. 87, 92-93 (2009); *see also Campbell-Ewald*, 577 U.S. at 164 n.5; *id.* at 180-82 (Roberts, C.J., dissenting). Thus, in *Beatley v. Ayers*, this Court held that a defendant's "mid-litigation payment of the $134,000 (plus interest) mooted" a breach of contract claim, even though the district court did not enter judgment for the plaintiff on that claim. 851 F. App'x 332, 336 (4th Cir. 2021) (per curiam); *see also* 2019 WL 2606840, at *10 (E.D. Va. June 25, 2019). The same must be true here.[3]

---

[3] For this reason, Hammons's arguments spun from the common law of tenders are irrelevant. The real issue is whether there remains a case or controversy under Article III, not whether Defendants have "compli[ed] with every common-law formality." *Campbell-Ewald*, 577 U.S. at 174 (Thomas, J., concurring in the judgment). The "requirement of injury in fact is a hard floor of Article III jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). So the absence of a judgment or admission of liability cannot be enough to keep a case alive if the plaintiff no longer has any unredressed injury.

Hammons suggests these principles work differently in the context of nominal damages (Opp. 15-16), but just the opposite is true. In awarding nominal damages, courts assume a "legal injury necessarily causes damage," and that nominal damages provide "concrete … redress" for that injury, which gives rise to standing when there would otherwise be "no remedy at all." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 798, 800-01 (2021). Nominal damages, in other words, allow courts to enforce "noneconomic rights" despite the Article III rule forbidding them to "declare [rights] in the abstract." *Id.* at 800. The necessary consequence of that logic, however, is that once nominal damages are paid, the plaintiff no longer has a redressable injury that can sustain an ongoing Article III controversy. That is the case here.

## **CONCLUSION**

The Court should dismiss this appeal.

November 20, 2023                         Respectfully submitted,

Denise Giraudo                           */s/ Yaakov M. Roth*
Paul Werner                              Yaakov M. Roth
SHEPPARD, MULLIN,                          *Counsel of Record*
RICHTER & HAMPTON LLP                    Audrey Beck
2099 Pennsylvania Avenue, NW             Ryan M. Proctor
Washington, D.C. 20036                   JONES DAY
(202) 747-1906                           51 Louisiana Avenue, NW
dgiraudo@sheppardmullin.com              Washington, D.C. 20001
pwerner@sheppardmullin.com               (202) 879-3939
                                         yroth@jonesday.com
                                         abeck@jonesday.com
                                         rproctor@jonesday.com

*Counsel for Appellees*

10

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,596 words. This motion complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ Yaakov M. Roth*
Yaakov M. Roth

*Counsel for Appellees*
